In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00277-CV

_____

IN RE COMMITMENT OF MICHAEL MARKS

_____

On Appeal from the 435th District Court
Montgomery County, Texas
Trial Cause No. 05-08-06849-CV
_____

MEMORANDUM OPINION

Appellant Michael Marks ("Marks" or "Appellant"), a civilly committed sexually violent predator ("SVP"), sued Marsha McLane ("McLane" or "Appellee") in her official capacity as the Executive Director of the Texas Civil Commitment Office. *See* Tex. Health & Safety Code Ann. §§ 841.001-.209 (the SVP statute). Marks challenges the constitutionality of being required to wear an ankle monitor while confined to the Texas Civil Commitment Center ("TCCC"). *See id.* § 841.082(a)(4)(A). The trial court dismissed Marks's case, and this appeal followed. We affirm.

1

## BACKGROUND

Marks was adjudged a sexually violent predator and civilly committed in 2006. We affirmed his commitment.[1] Marks later appealed but then dismissed a different case pertaining to his civil commitment.[2] The subject matter and proceedings of that case are not included in the record of this case.

Although Marks's initial commitment order required him to live in Dallas County, the 2015 amendments to the SVP statute required Marks to live at the TCCC and participate in a tiered treatment program. *See id.* § 841.082(a)(1). Marks, like many other civilly committed SVPs, is subject to GPS monitoring. *See id.* § 841.082(a)(4). The applicable statutory sections read:

> (a) Before entering an order directing a person's civil commitment, the judge shall impose on the person requirements necessary to ensure the person's compliance with treatment and supervision and to protect the community. The requirements shall include:
>
> (1) requiring the person to reside where instructed by the office;
> . . .
> (3) requiring the person's participation in and compliance with the sex offender treatment program provided by the office and compliance with all written requirements imposed by the office;
>
> (4) requiring the person to submit to appropriate supervision and:
>
> (A) submit to tracking under a particular type of tracking service, if the person:

---

[1] *In re Commitment of Marks*, 230 S.W.3d 241, 243 (Tex. App.—Beaumont 2007, no pet.).

[2] *In re Commitment of Marks*, No. 09-12-00422-CV, 2013 Tex. App. LEXIS 2696, at *1 (Tex. App.—Beaumont Mar. 14, 2013, no pet.) (mem. op.).

(i) while residing at a civil commitment center, leaves the center for any reason;

(ii) is in one of the two most restrictive tiers of treatment, as determined by the office;

(iii) is on disciplinary status, as determined by the office; or

(iv) resides in the community; and

(B) if required to submit to tracking under Paragraph (A), refrain from tampering with, altering, modifying, obstructing, removing, or manipulating the tracking equipment[.]

*Id.* § 841.082(a)(1), (3), (4).

The Texas Civil Commitment Offices' (TCCO) policy adopts the statutory terms, stating, in pertinent part:

. . .

**II. Clients Required to Submit to GPS Tracking**

Clients shall submit to GPS tracking when they:

. . .

B. Are assigned to one of the two most restrictive tiers of treatment, which includes Tier 1 and Tier 2-1 (Initial Placement or Incident Report). Tier 2-1 is defined as a client in the first six (6) months of Tier 2, or a Tier 2 client with an incident report sustained at a Behavioral Management Review (BMR).

C. Have not yet been assigned to a tier;

D. Arrive at the TCCC from a correctional facility, state hospital, state supported living center or community commitment, and continuing for at least six (6) months regardless of tier;

E. Are program non-compliant as determined by the Texas Civil Commitment Office (TCCO) Management Staff which may include, but is not limited to, the following:

> 1. Receipt of an incident report that was sustained at a BMR, within the last 6 months;
>
> 2. Placed in the Secure Management Unit (SMU) due to behavioral issues;
>
> 3. Delinquent in cost recovery and does not have an established, approved payment plan;
>
> 4. A client who has been reduced from Tier Five;
>
> 5. A client on package restriction;
>
> 6. A client who has privileges suspended or revoked;
>
> 7. A client with pending criminal charges or currently under investigation for a criminal offense;
>
> 8. Program non-compliance, to include but is not limited to rule violations or refusing to participate in treatment or additional required programming; or
>
> 9. Is considered a flight risk.

The policy then details the steps to take when determining whether GPS removal is appropriate.

In his May 8, 2023 pleading, Marks sought a declaratory judgment that the statute requiring GPS monitoring was unconstitutional, since GPS monitoring is "not the least amount of restraint necessary to effectuate the State's compelling interest for the safety of the community." Marks further equated a GPS monitor to a ball and

4

chain. Marks did, however, acknowledge that at the time he filed his petition, he had been in Tier Two for roughly eleven months, but that his GPS monitor had not yet been removed because he "received a disciplinary action, and allegedly failed a polygraph." In June 2023, Marks sought habeas corpus relief in the committing court, alleging he had been "illegally restrained of his liberty through the unconstitutional use of a GPS leg-monitor tracking device[.]"

McLane answered with a general denial and a Motion to Dismiss, which includes a Plea to the Jurisdiction. McLane's Plea to the Jurisdiction relies on the doctrines of sovereign immunity, official immunity, collateral estoppel, res judicata, and Marks's alleged failures to exhaust administrative remedies and failure to state a claim upon which relief could be granted. The trial court "heard Respondent's Original Answer and Motion to Dismiss (the 'Plea to the Jurisdiction'), and duly considered all relevant filings, arguments, and evidence of the parties and their respective counsel[,]" and granted McLane's Motion to Dismiss, ordering "that Respondent's Motion to Dismiss is granted[,]" and further ordering "that Petitioner's claims are dismissed as frivolous and malicious and with prejudice."

**STANDARD OF REVIEW AND ANALYSIS**

Subject-matter jurisdiction is essential to a court's power to decide a case and is never presumed or waived. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852

5

S.W.2d 440, 443–44 (Tex. 1993). We review a jurisdictional challenge de novo. *See City of Elsa v. Gonzalez*, 325 S.W.3d 622, 625 (Tex. 2010).

"A plea to the jurisdiction is a dilatory plea, the purpose of which is generally to defeat an action 'without regard to whether the claims asserted have merit.'" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012) (quoting *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). "Typically, the plea challenges whether the plaintiff has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Id.* "However, a plea to the jurisdiction can also properly challenge the *existence* of those very jurisdictional facts[,]" and "the court can consider evidence as necessary to resolve any dispute over those facts, even if that evidence 'implicates both the subject-matter jurisdiction of the court and the merits of the case.'" *Id.* (quoting *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)).

Although the trial court did not expressly address the merits of Marks's complaints, it lacked the jurisdiction to do so if McLane was shielded by sovereign immunity or if Marks did not plead sufficient jurisdictional facts. *See San Jacinto River Auth. v. Ackley*, No. 09-22-00109-CV, 2024 Tex. App. LEXIS 7419, at **18, 27–28 (Tex. App.—Beaumont Oct. 17, 2024, no. pet.) (mem. op.). "When a defendant challenges jurisdiction, a court 'is not required to look solely to the pleadings but may consider evidence and must do so when necessary to resolve the

6

jurisdictional issues raised.'" *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019) (quoting *Bland Indep. Sch. Dist.*, 34 S.W.3d at 555).

Marks's appeal includes four issues:

1. Did the trial court abuse its discretion in failing to rule on the merits of Appellant's constitutional challenge to the State Statute Texas Health and Safety Code (HSC) § 841.082(a)(4)(A)(ii)-(iii), pursuant to the Uniform Declaratory Judgment Act of the Texas Civil Practice & Remedies Code (CPRC) § 37?

2. Did the trial court abuse its discretion for failing to rule on the merits of Appellant's civil habeas corpus from an illegal restraint, thus depriving this court of jurisdiction?

3. Did the trial court commit reversible error for failing to timely notify Appellant of the dismissal hearing on the Appellee's motion to dismiss, pursuant to the Texas Rules of Civil Procedure (TRCP) 91a.6, thus depriving him of the opportunity to be timely notified and meaningfully heard within the fourteen-day (14) notification period?

4. Did the committing court err for failing to state on what grounds it [d]ismissed Appellant's two separate issues?

Issue One: Abuse of Discretion – Constitutional Challenge

In his first appellate issue, Marks contends that the trial court abused its discretion in failing to rule on his constitutional challenge and he argues that the SVP statute is unconstitutional because "it forces him to submit to a GPS leg monitor-tracking device, that unnecessarily impinges on his liberty." Marks further posits that "[t]he statutory requirement to shackle Appellant with a GPS tracking device while indefinitely confined in a maximum security treatment facility is

7

arbitrarily punitive, and is excessive in relation to its intended purpose[.]" We interpret this issue as a challenge to the trial court's decision not to reach the merits of his constitutional challenge to the SVP statute, despite the directive that courts resolve issues on non-constitutional grounds when it is possible to do so. *See City of Beaumont v. Int'l Ass'n of Firefighters, Local Union No. 399*, 241 S.W.3d 208, 216 (Tex. App.—Beaumont 2007, no pet.); *see also Black v. McLane*, No. 07-19-00241-CV, 2021 Tex. App. LEXIS 2195, at *8 (Tex. App.—Amarillo Mar. 23, 2021, pet. denied) (mem. op.).

The Uniform Declaratory Judgments Act permits a person to "obtain a declaration of rights, status, or other legal relations []" under a statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.002(a), 37.004(a). To establish the trial court's jurisdiction under the UDJA, however, Marks needed to "allege sufficient facts to demonstrate the trial court ha[d] jurisdiction over [his] claims." *Glawson v. Polk Cnty. Bail Bond Bd.*, 654 S.W.3d 763, 769 (Tex. App.—Beaumont 2022, pet. denied). Conclusory pleadings "fail to allege facts sufficient to support" a claim. *Id.* (citing *City of Elsa*, 325 S.W.3d at 625).

Marks's pleadings are conclusory and do not "sufficiently allege jurisdictional facts[.]" *See Matzen v. McClain*, 659 S.W.3d 381, 385 (Tex. 2021). Marks's contentions that the GPS tracking device constitutes "cruel and unusual punishment," and an "illegal restrain[t] of his liberty[]" are not allegations of

8

jurisdictional facts, but are instead conclusory statements unsupported by facts, in that Marks does not explain how the GPS monitor allegedly curtailed his liberty within the TCCC. *See In re Pope*, No. 09-23-00286-CV, 2025 Tex. App. LEXIS 2464, at *32 (Tex. App.—Beaumont Apr. 10, 2025, no pet.) (mem. op.) (defining a conclusory statement as one that provides no basis to support it). Since Marks did not allege jurisdictional facts or present evidence relevant to the existence of jurisdictional facts supporting his contention that a GPS monitor is unconstitutional, he did not invoke the trial court's jurisdiction, and the trial court correctly granted the Plea to the Jurisdiction and dismissed Marks's case. *Id.*

Similarly, in *Matzen v. McLane*, the appellant challenged, among other things, the constitutionality of the cost-recovery rules that required him to pay for his housing, treatment, and GPS tracking. 659 S.W.3d 381, 385 (Tex. 2021). In *Matzen*, the trial court granted most of the plea to the jurisdiction, while allowing the takings and due process claims to proceed. *Id.* at 387. On appeal, the Texas Supreme Court stated that it was the plaintiff's burden "'to allege facts that affirmatively demonstrate'" jurisdiction. *Id.* at 389. Although the jurisdictional question in *Matzen* concerned an ultra vires claim, the same principle applies here: that it is the plaintiff's burden to allege sufficient facts to demonstrate subject-matter jurisdiction. *See id.* at 388. Since Marks failed to do so, he did not establish jurisdiction, and the trial court therefore correctly dismissed his cases.

9

When repleading cannot cure the jurisdictional defect, the trial court need not allow the plaintiff to replead. *See Marcantel v. Patterson*, No. 09-18-00293-CV, 2020 Tex. App. LEXIS 5384, at **6, 8–9 (Tex. App.—Beaumont July 16, 2020, pet. denied) (mem. op.). Since Marks has failed to establish that he suffered a "concrete and particularized injury-in-fact[,]" from being required to wear a GPS monitor while committed at the TCCC, he cannot replead his complaint to allege jurisdictional facts that would bring this matter within the trial court's jurisdiction. *See City of San Antonio v. Southside Affordable Dev., LLC*, No. 04-24-00371-CV, 2025 Tex. App. LEXIS 4981, at *13 (Tex. App.—San Antonio July 16, 2025, no pet.) (requiring an injury as an element of constitutional standing). We overrule Marks's first appellate issue.

Issue Two: Abuse of Discretion – Habeas Corpus

Marks next argues that the trial court abused its discretion by failing to rule on the merits of his civil habeas corpus challenge to what he contends is an illegal restraint. This court lacks jurisdiction to address his habeas complaint because the trial court did not address the merits of it. *See Ex parte Williams*, 200 S.W.3d 819, 820 (Tex. App.—Beaumont 2006, no pet.) (citations omitted).

In *Williams*, the trial court denied the appellant's habeas corpus petition without conducting an evidentiary hearing. *Id.* When the appellant appealed the denial, we stated that "[w]e would exceed our authority as an intermediate appellate

10

court if this Court were to act inconsistently with controlling Court of Criminal Appeals' decisions." *Id.* at 820, 823 (citation omitted). We followed *Ex parte Williams* in *Ex parte Miller*, noting that "we are bound by existing precedent of the Texas Supreme Court and the Texas Court of Criminal Appeals holding that an appellate court has no jurisdiction to hear the appeal when the trial court did not deny the application for writ of habeas corpus on its merits." No. 09-08-00194-CV, 2009 Tex. App. LEXIS 2298, at *3 (Tex. App.—Beaumont Apr. 2, 2009, no pet.) (mem. op.) (citations omitted); *see also Ex parte Richards*, No. 09-24-00077-CV, 2024 Tex. App. LEXIS 4499, at *11 (Tex. App.—Beaumont June 27, 2024, no pet.) (mem. op.). We overrule his second issue.

Marks anticipated our lack of jurisdiction over his habeas corpus appeal, and therefore "respectfully request[ed] this Court to consider his appeal as a Petition for Writ of Mandamus, by utilizing each party's brief, and the entire appellate record as reference." "We may issue a writ of mandamus to remedy a clear abuse of discretion by the trial court when the relator lacks an adequate remedy by appeal." *Ex parte Poest*, No. 09-24-00072-CV, 2024 Tex. App. LEXIS 4500, at *12 (Tex. App.—Beaumont June 27, 2024, no pet.) (mem. op.). The relator, Marks, "bears the burden to provide the Court with a sufficient record to establish his right to mandamus relief." *In re Asbell*, No. 09-22-00132-CV, 2024 Tex. App. LEXIS 1342, at *5 (Tex. App.—Beaumont Feb. 22, 2024, no pet.) (mem. op.). Marks has not shown that the

11

trial court abused its discretion by declining to consider the merits of his habeas corpus petition. *See Ex parte Poest*, 2024 Tex. App. LEXIS 4500, at *12.

Poest, like Marks, was a civilly committed SVP. *See id.* at **1–2. We declined to exercise jurisdiction over Poest's habeas corpus petition since the trial court did not rule on the merits of his habeas application. *Id.* at **2, 9–11. We considered Poest's "misguided arguments" that the 2015 amendments did not apply to him because he was civilly committed before the effective dates of those amendments. *Id.* at **16-17. We then concluded that since the 2015 amendments did apply to Poest, "the trial court did not abuse its discretion in denying the application," and denied Poest's request for mandamus relief. *Id.* at 17.

Marks has not shown that the trial court abused its discretion and we deny his petition for a writ of mandamus. *See In re Poest*, 2024 Tex. App. LEXIS 4500, at **1–2; *In re Brown*, 2018 Tex. App. LEXIS 10023, at **1–2.

Issue Three: Rule 91a

In his third issue, Marks contends that the trial court erred by failing to provide fourteen days' notice of a dismissal hearing, as required by Rule 91a.6 of the Texas Rules of Civil Procedure. *See* Tex. R. Civ. P. 91a.6.

Rule 91a allows a party to "move to dismiss a cause of action on the grounds that it has no basis in law or fact." Tex. R. Civ. P. 91a.1. The rule permits the court to conduct an oral hearing on the motion but does not require it to do so. Tex. R.

12

Civ. P. 91a.6. When the court chooses to conduct an oral hearing on a dismissal motion filed pursuant to Rule 91a, "[e]ach party is entitled to at least 14 days' notice of the hearing on the motion to dismiss." *Id.* Respondent's Motion to Dismiss, however, was not based on Rule 91a, and therefore the trial court was not required to provide the notice required by Rule 91a. *See* Tex. R. Civ. P. 91a.6. Since Rule 91a has no bearing on the trial court's dismissal, we overrule Marks's third issue.

Issue Four: Dismissal Grounds

Marks's final appellate issue complains that the trial court erred by "failing to state on what grounds it dismissed Appellant's two separate issues[.]" Marks has not, however, cited any authority requiring the trial court to state its grounds, and we are aware of none. *See* Tex. R. App. P. 38.1(i) (requiring appropriate citations to authorities).

Marks acknowledges that when a court declines to state the reasons for its dismissal, the appellate court may uphold the trial court's ruling if that ruling was correct under any applicable legal theory. Marks therefore must disprove every ground the trial court could have relied on or Marks cannot prevail. *See Pickens v. Hartford Ins.*, No. 09-21-00052-CV, 2022 Tex. App. LEXIS 8108, at **2–3 (Tex. App.—Beaumont Nov. 3, 2022, no pet.) (mem. op.) ("When a trial court sustains a plea to the jurisdiction based on multiple grounds without specifying the ground or grounds relied upon, an appellant must challenge all the grounds on appeal or else

13

the appellate court will affirm.") (citations omitted). Marks failed to address each and every ground for the dismissal.

The Motion to Dismiss and Plea to the Jurisdiction urges multiple grounds for dismissal, including sovereign and official immunity, and the affirmative defenses of collateral estoppel and res judicata. *See* Tex. R. Civ. P. 94. The motion also seeks dismissal for failure to state a claim upon which relief can be granted, stating that Marks's "claims are rife with conclusory allegations, irrelevant citations, and legal errors."

Although Marks filed a response to Respondent's contentions of immunity and other defenses, he did not address section 13.001 of the Texas Civil Practice and Remedies Code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 13.001(a), (b). This section reads:

(a) A court in which an affidavit of inability to pay under Rule 145, Texas Rules of Civil Procedure, has been filed may dismiss the action on a finding that:

(1) the allegation of poverty in the affidavit is false; or

(2) the action is frivolous or malicious.

(b) In determining whether an action is frivolous or malicious, the court may consider whether:

(1) The action's realistic chance of ultimate success is slight;

(2) The claim has no arguable basis in law or in fact; or

(3) It is clear that the party cannot prove a set of facts in support of the claim.

*Id.*

Marks filed the instant claim alleging an inability to pay. Therefore, if his claim is frivolous or malicious, the trial court was authorized to dismiss it. *See id.* Marks contends that his ankle monitor restricts his liberty, yet he does not explain how an ankle monitor restricts his liberty within the TCCC where he is confined. To the contrary, we have observed that a tracking device is "a less restrictive restraint than that approved in *Hendricks*."[3] *In re Commitment of Graham*, 117 S.W.3d 514, 515 (Tex. App.—Beaumont 2003, pet. denied). Although Marks alleged that his liberty was restrained and he relied on *Youngberg v. Romeo* and *May v. Sheahan* to support his argument, these cases are inapposite. *See Youngberg v. Romeo*, 457 U.S. 307, 319 (1982) (bodily restraint); *May v. Sheahan*, 226 F.3d 876, 878 (7th Cir. 2000) (shackled to bed). Unlike Nicholas Romeo and Gregory May, Marks was not physically restrained. Since Marks's contention that an ankle monitor restricts his liberty (1) has a slight chance of ultimate success; (2) has no arguable basis in law or fact; and (3) is not susceptible of proof of a set of facts in support of Marks's claim, the trial court was justified in finding Marks's claim frivolous and malicious.

---

[3] In *Kansas v. Hendricks*, the United States Supreme Court upheld the constitutionality of confining a civilly committed sexually violent predator for treatment. 521 U.S. 346, 368 (1997).

*See* Tex. Civ. Prac. & Rem. Code Ann. § 13.001(b). We overrule Marks's final appellate issue.

To the extent Marks's brief contains other arguments, Marks has not provided either a "clear and concise argument" for his assertions nor has he supported his arguments with "appropriate citations to authorities[.]" *See In re Commitment of Beasley*, No. 09-08-00371-CV, 2009 Tex. App. LEXIS 8664, at *15 (Tex. App.— Beaumont Nov. 12, 2009, no pet.) (mem. op.); *In re Commitment of Walters*, No. 09-14-00158-CV, 2015 Tex. App. LEXIS 1633, at **11–12 (Tex. App. —Beaumont Feb. 19, 2015, no pet.) (mem. op.). As Marks's appellate issues are not adequately briefed, we have nothing to review and overrule Marks's issues on this additional basis.

## CONCLUSION

We affirm the trial court's order of dismissal.

AFFIRMED.

JAY WRIGHT
Justice

Submitted on June 2, 2025
Opinion Delivered August 21, 2025

Before Golemon, C.J., Johnson and Wright, JJ.

16